UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY LYN KRUEGER,

        Petitioner,               Case No. 1:06-cv-414

v.                                 Honorable Robert Holmes Bell

CAROL HOWES,

        Respondent.
_____/

## MEMORANDUM OPINION

This habeas corpus action is before the Court on Petitioner's objections to the report and recommendation of the magistrate judge. Petitioner pleaded guilty in the Grand Traverse County Circuit Court of first-degree criminal sexual conduct. The victim was Petitioner's fourteen-year-old step-daughter. On January 21, 2005, the trial court sentenced him to imprisonment for 81 to 240 months. The report and recommendation of the magistrate judge concluded that Petitioner failed to exhaust his state court remedies with regard to his due-process claim. *See* 28 U.S.C. § 2254(b)(1). The magistrate judge further found that Petitioner's due-process claim was waived by his guilty plea, and, thus, may not be reviewed. Petitioner has filed objections to the report and recommendation (docket #7). This Court must accord *de novo* review to properly filed objections. 28 U.S.C. § 636(b)(1)(B).

### Objections

Petitioner argues that the magistrate judge erred in finding that he did not fairly present his due-process claim in the state court. Specifically, Petitioner argues that the factual

section of the report and recommendation misstates the claims that Petitioner made in the state courts in support of his motion to suppress. Petitioner maintains that his claims of improper police deception were ruled upon separately by the trial court, and were presented on appeal to the Michigan appellate courts as a due-process claim. Further, Petitioner contends that the magistrate judge incorrectly concluded that Petitioner waived his due-process claim.

This Court has reviewed the state-law materials submitted by Petitioner (docket #5) and finds that the magistrate judge correctly concluded that Petitioner failed to satisfy the exhaustion requirement with regard to his due-process claim. In the state courts, Petitioner used the fact of police deception or trickery to support his *Miranda* claim, not to assert an independent due-process claim. For example, in his brief before the Michigan Court of Appeals, Petitioner argued:

> The objective circumstances of the Defendant's situation demonstrate that he was 'in custody' of the police in his home when he was speaking to a detective who misrepresented his identity and other police officers were waiting directly outside the door of the home. Although it has been recognized that "[c]ourts are less willing to find custodial circumstances where interrogation occurs in familiar or neutral surroundings . . ." and that " . . . interrogation in a suspect's home is usually viewed as noncustodial." *People v. Mayes*, 202 Mich App 181, 196; 508 NW2d 161 (1993); *Beckwith v. United States*, 425 US 341; 96 S Ct 1612; 48 LEd2d 1 (1976). Defendant's case is distinguishable because trickery was used by the police to distort the reality that Defendant was actually in a custodial situation and his home was not the neutral environment that was relied upon in *Mayes* and *People v. Coomer*, 245 Mich App 206, 220; 627 NW2d 612 (2001).

\* \* \*

> Even after safety was no longer an issue, the detectives continued to maintain the charade that they were FIA workers and unlawfully elicited the Defendant's confession. (PT, p. 37). *People v. Daoud*, 462 Mich 621 (2000); *People v. Cheatham*, 452 Mich 1 (1996). With the knowledge that the Defendant wished to get his family back together . . . Detective Erway prayed on the Defendant's vulnerability and elicited a confession in a custodial situation without proper *Miranda* warnings. (PT, p. 41).

(Docket #5, Exhibit 2, pp. 11-12.) Nowhere in his brief before the Michigan Court of Appeals does Petitioner use the word "coercion" or otherwise identify an independent due-process claim. As discussed in greater detail below, the hallmark of a due-process violation is police coercion. The mere allegation of police deception or trickery in the context of Petitioner's *Miranda* argument was insufficient to put the state courts on notice of a separate and independent due-process claim.

Moreover, the magistrate judge was correct in finding that Petitioner's single reference in his state appellate briefs to *People v. Daoud*, 614 N.W.2d 621 (Mich. 2000), was inadequate to fairly present his due-process claim. As stated by the magistrate judge, *Daoud* was a *Miranda* case and was cited by Petitioner in support of his *Miranda* claim. The fact that the words "due process" appeared in the "Historical Perspective" section of that opinion falls far short of the fair presentation requirement.

Petitioner also contends that the magistrate judge erroneously concluded that Petitioner waived his due-process claim by pleading guilty. A voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings. *United States v. Cottage,* 307 F.3d 494, 499 (6th Cir. 2002); *see also Tollett v. Henderson,* 411 U.S. 258, 267 (1973) (holding that a defendant who has pleaded guilty waives his right to appeal constitutional violations that occurred prior to the guilty plea). Petitioner generally conditioned his plea upon the issues raised in his motion to suppress. Petitioner asserts that his due-process claim was among the issues raised in the suppression proceedings before the trial court, and thus, was preserved for appeal. The magistrate judge reasoned that because Petitioner presented only a violation of his Fifth Amendment *Miranda* rights in the state courts, and failed to fairly present his Fourteenth Amendment due-process rights, he could not have preserved the issue for appeal. Petitioner argues that the failure to meet the federal exhaustion requirement does not necessarily equate to a failure to preserve the issue for appeal in

3

state court. Petitioner maintains that the issue of whether he properly preserved his due-process claim in the state trial court is an issue for the state court to decide in a motion for post-conviction relief.

This Court need not resolve the waiver issue, as Petitioner's due-process claim even if not waived, is meritless. Under Rule 4 of the Rules Governing § 2254 Cases, the Court may *sua sponte* dismiss a petition for lack of merit on its face. The Court also may dismiss the petition on the merits notwithstanding the lack of exhaustion. 28 U.S.C. § 2254(b)(2).

### **Merits**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Where, as here, the state court has decided the issue, the federal courts are obligated to conduct *de novo* review to determine if the result in the state court is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003).

It is undisputed that police used deceptive tactics to lure Petitioner to his home on September 22, 2004, so that he could be interviewed and placed under arrest. Petitioner claims that Detective Erway instructed Petitioner's wife to induce him to come home by telling Petitioner that FIA workers were at their home and wanted to assist them in keeping the family together. Petitioner alleges in his habeas brief that "the police directed the wife to call the husband, Mr. Krueger, to 'come home,' and 'talk as a family,' the unspoken implication is clearly that if they could talk out their problems the family could stay together as a unit." (Br. in Support of Pet., 15, docket #2). Petitioner further claims that he was led to believe that the "FIA workers were there to help facilitate the reunification, perhaps through counseling of some sort." (*Id.*). When Petitioner arrived home, Detective Erway posed as an FIA worker and talked to Plaintiff about his step-daughter's accusation. It was only after Petitioner made incriminating statements that Detective Erway revealed his true identity and placed Petitioner under arrest.

The Supreme Court has held "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton,* 474 U.S. 104, 109 (1985). The question in each of these cases is whether a defendant's will was overborne at the time he confessed. *Reck v. Pate,* 367 U.S. 433, 440 (1961); *see also Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir. 1994) ("An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist."). Coercive police activity is necessary for a confession to be found involuntary under the Due Process Clause of the Fourteenth Amendment. *See Colorado v. Connelly,* 479 U.S. 157, 167 (1986); *Clark v. Mitchell,* 425 F.3d 270, 283 (6th Cir. 2005). Unconstitutional coercion may be mental as well as physical. *Arizona v. Fulminante,* 499 U.S. 279, 287 (1991). In

determining whether a defendant's will was overborne, the Court looks at the totality of the circumstances surrounding the confession. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973); *McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir. 2006). Factors considered in assessing the totality of the circumstances include the age, education, and intelligence of the defendant; whether the defendant has been informed of his *Miranda* rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as deprivation of food or sleep. *Id.*

Federal courts repeatedly have held that "[t]rickery, deceit, even impersonation do not render a confession inadmissible, certainly in noncustodial situation and usually in custodial ones as well, unless government agents make threats or promises." *United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001) (*citing Frazier v. Cupp*, 394 U.S. 731, 739 (1969)); *see also United States v. Crawford*, 372 F.3d 1048, 1060-61 (9th Cir. 2004), *cert. denied*, 543 U.S. 1057 (2005). As the Seventh Circuit observed:

> *Nothing* is more common in the noncustodial setting of police investigations than for an undercover police officer to extract a damaging admission from a criminal suspect simply by pretending to be another criminal. The admission is usable in evidence against the suspect even though he would never have spilled the beans to the officer had he known the officer's status.

*Kontny*, 238 F.3d at 817 (emphasis in original); *see also United States v. Byram*, 145 F.3d 405, 408 (1st Cir. 1998) ("trickery is not automatically coercion. Indeed, the police commonly engage in such ruses as suggesting to a suspect that a confederate has just confessed or that police have or will secure physical evidence against the suspect. While the line between ruse and coercion is sometimes blurred, confessions procured by deceits have been held voluntary in a number of situations"); *Ledbetter*, 35 F.3d at 1069 (neither "mere emotionalism and confusion" nor mere "trickery" will alone necessarily invalidate a confession.).

It also is well-recognized that an interrogator's appeal to the defendant's emotions generally does not constitute police coercion. *McCall v. Dutton,* 863 F.2d 454, 460 (6th Cir. 1988) ("mere emotionalism and confusion" did not by itself constitute police coercion); *Hopkins v. Cockrell*, 325 F.3d 579 (5th Cir. 2004) (same). This is so, even when the emotional appeal concerns the defendant's family or a loved one. *See, e.g.,.United States v. Jackson*, 918 F.2d 236, 242 (1st Cir. 1990) (confession voluntary even though defendant was told that his sister was under arrest); *United States v. Haynes*, 301 F.3d 669, 684 (6th Cir. 2002) (statement voluntary despite alleged threat of legal action against defendant's girlfriend and daughter)*; United States v. Brave Heart,* 397 F.3d 1037, 1041 (8th Cir. 2005) (confession voluntary though investigator told defendant that he understood defendant's "stress and pressure" and it was unfair that his son would bear burden of responsibility for death); *Thompson v. Haley*, 255 F.3d 1292, 1296-97 (11th Cir. 2001) (confession voluntary though police told defendant that his girlfriend might go to the electric chair if he did not confess because police had probable cause to arrest girlfriend for murder).

Here, Petitioner was not subject to a custodial interrogation as the interview was conducted in his home. Petitioner, in fact, abandoned his claim that he was subject to a custodial interrogation. The interview at Petitioner's home was relatively short, approximately one hour. Petitioner does not allege that he was subject to any physical coercion whatsoever, but contends that he was subject to mental or emotional coercion when he was offered the opportunity to be reunited with his family. Under the authorities cited above, the possibility of keeping his family together was not enough to overbear Petitioner's will, particularly when he was not subject to a custodial interrogation. Plaintiff makes much of the fact that he confessed to a person that he believed to be an state FIA worker, not a police officer. Given Petitioner's age and life experience, he had no reason to believe that admitting his criminal conduct against his step-daughter to a state FIA worker would have a significantly different effect than admitting it to a law enforcement officer. Accepting all of Petitioner's allegations as true, the Court concludes as a matter of law that the statement to

Detective Ewing was not the result of unlawful police coercion. Certainly, Petitioner can point to no holding of the Supreme Court that establishes a due-process claim arising from an officer's deceit concerning his identity in a noncustodial setting. Accordingly, his due-process claim is without merit. 28 U.S.C. § 2254(d).

In his second ground for habeas corpus relief, Petitioner asserts that the subsequent confession he gave at the police station was tainted by the unconstitutional confession at his home. Because the statement given by Petitioner at his home was not unconstitutionally coerced, his claim concerning the statement taken at the police station necessarily fails.

## Conclusion

Upon *de novo* review, the Court endorses the reasoning of the report and recommendation on the issue of exhaustion of state court remedies and further finds that Petitioner's habeas corpus action must be dismissed pursuant to Rule 4 of the Rules Governing § 2254 Cases for lack of merit on its face.

An order consistent with this opinion will be entered.


Date:     September 19, 2006            /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT JUDGE